**Fred Edmond OEHLERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 35439.**

Court of Criminal Appeals of Texas.

Feb. 27, 1963.

On Motion to Reinstate Appeal April 17, 1963.

Rehearing Denied May 29, 1963.

Greenwell & Hines, Thomas E. Hines, Robert A. Greenwell, Houston, for appellant.

Ted Schulz, County Atty., Richmond, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is operating an automobile upon a public road while intoxicated; the punishment, 3 days in jail and a fine of $50.

The record contains no notice of appeal entered of record, as required by Art. 827, C.C.P.

Recital appearing in the court's docket: "Notice of appeal given" is not a sufficient compliance with the statute. Keilmann v. State, 162 Tex.Cr.R. 603, 288 S.W.2d 113; Root v. State, 164 Tex.Cr.R. 589, 301 S.W.2d 145; Black v. State, Tex.Cr.App., 268 S.W.2d 661; Loud v. State, 166 Tex.Cr.R. 81, 309 S.W.2d 71.

In the absence of a notice of appeal entered of record, as required by the statute, this Court is without jurisdiction to enter any order other than to dismiss the appeal.

The appeal is dismissed.

### ON MOTION TO REINSTATE APPEAL

BELCHER, Commissioner.

The record having been perfected, the motion to reinstate is granted.

It is undisputed that the appellant was driving an automobile upon a public highway at the time and place alleged.

Appellant contends that Officers Wilson and Nicholson, both State Highway Patrolmen, who were the only witnesses to express opinions that he was intoxicated, did not show by their testimony that they possessed sufficient facts upon which they could base their opinions.

In describing the manner of appellant's operation of his car, which Officers Wilson and Nicholson followed for about one quarter of a mile before he turned off and stopped, Officer Wilson testified that:

"The car was being driven in an erratic manner. It would dribble over to the center stripe and touch the center stripe and weave back over on the right-hand side of the roadway and back over to the center stripe. One time it *run* completely off the pavement about three-fourths of the car was off on the shoulder."

He further testified of his observations of the appellant immediately after he had stopped, as follows:

"Q. Officer, in all events according to your testimony, his walk was slow and deliberate? That is the way you describe it?

"A. Yes, sir.

"Q. How close did you get to him, at this time?

"A. Quite close to observe his breath and smell about him.

"Q. Did you notice any particular odors at that time?

"A. Yes. His breath had the smell of alcoholic beverages.

"Q. Will you state whether or not you noticed anything about his speech?

"A. His speech was similar to his walking. His speech was slow and his mind was slow.

\* \* \* \* \* \*

"Q. Mr. Wilson, during your time you have served as a patrolman, will you state whether or not you have handled drunken people under the influence of intoxicating liquor.

"A. Yes, sir.

"Q. Many of them?

"A. Yes, sir.

"Q. Officer, will you state whether or not in your opinion Mr. Oehlers was under the influence of intoxicating liquor.

"A. Yes, he was.

"Q. You took him in custody on the basis of that? Is that correct?

"A. Yes, sir. \* \* \*"

Testifying about the first time Officers Wilson and Nicholson saw the appellant, Officer Nicholson testified as follows:

"A. We were looking for his car and we saw the car pass us going east and we turned around and followed him.

"Q. Now, Officer Nicholson, at that time, did you notice his driving?

"A. Yes, sir.

"Q. Will you tell the court and jury what took place?

"A. Well, the driving was very erratic. He ran off the shoulder on the right side of the road and back to center line and he was weaving from the outside edge of the pavement back to the center line.

"Q. All right, sir. How far, Officer, do you think that you observed him driving like that?

"A. Oh, I would say—we were exactly behind him. I would say approximately a quarter of a mile. It could be slightly more. Around a quarter of a mile.

\* \* \* \* \* \*

"Q. Will you tell the court and jury how you saw him walk? If you observed it.

"A. He walked slow and deliberate. He watched the ground like he was afraid—

\* \* \* \* \* \*

"Q. How did he talk?

"A. His speech was slow.

\* \* \* \* \* \*

"Q. Officer, did you get close to Mr. Oehlers?

"A. Yes, sir.

"Q. Did you smell any odors?

"A. Yes, sir. There was an odor of some type of alcoholic beverage about him.

"Q. All right, sir. Now, Officer, you have handled people who have been under the influence of intoxicating liquor?

"A. Yes, sir.

"Q. Based upon your observation of Mr. Oehlers and things which you saw as you observed him there, will you state whether or not in your opinion he was under the influence of intoxicating liquor?

"A. In my opinion he was under the influence of liquor."

According to the testimony, the witness Harvey Neil alerted Officers Wilson and Nicholson about the erratic operation of a certain automobile which conforms to the description the officers gave of the one driven by the appellant when apprehended. While testifying about said car Harvey Neil stated:

"Well, the first thing I noticed about the car it was traveling extremely slow for the highway and the car was not only traveling slow, but was swerving on the highway running across the center line into the oncoming lane of traffic. And in the distance that I observed the car, which I presumed to be something like three miles or so between Park Road and the river bridge, he actually went off either shoulder of the road on both sides of the highway and at least of the oncoming cars, two had to leave the road to keep from having a headon collision.

"Q. All right, sir. How far did you observe the car? Do you have any idea, Reverend, about the number of miles?

"A. I would guess approximately three miles. Possibly four."

Testifying in his own behalf, the appellant admitted that he was driving an automobile on the highway at the time in question but denied he was intoxicated. He attributes any erratic driving to his tired and exhausted physical condition due to working long hours daily and the strain of business complications. He testified that he had two mixed drinks that day, one in the morning and another after lunch, and two beers about 6 p. m.; that about 9 p. m. he turned off the road and stopped because he was getting sleepy, and was then approached by the officers, but said he did not stop because of any signal given by them. His testimony was corroborated by several witnesses, and others testified that he bore a good reputation.

The question is whether there is sufficient evidence to support the conviction because the officers' opinions were based upon facts, which were as consistent with sobriety as with intoxication, and not whether they had sufficient knowledge of the facts to permit them to express an opinion as to appellant's intoxication. There was no objection to their testimony expressing the opinion that appellant was intoxicated.

The testimony of the appellant and his witnesses showing his tired, sleepy and exhausted physical condition and explaining his erratic driving, with the other evidence offered by him when considered in connection wtih the testimony of the two officers at most raised an issue of fact as to appellant's intoxication. We do not agree that the facts and circumstances upon which the officers based their opinion that appellant was intoxicated are as consistent with sobriety as with intoxication or that the probative value of their opinions was overcome by the facts upon which such opinions were based. Mendoza v. State, 169 Tex. Cr.R. 88, 332 S.W.2d 335.

The jury resolved the issue of intoxication against the appellant.

The other contention presented has been considered and it does not show error.

The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.